# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

BARBARA SOPKIN,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀Civil Action No. 22-cv-03300 (TSC)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
JOHN LOPATTO,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Defendant.⠀⠀⠀⠀)

## MEMORANDUM OPINION

Defendant John Lopatto has moved to dismiss, ECF No. 12, this action filed by *pro se* Plaintiff Barbara Sopkin.  For the reasons explained below, Lopatto's Motion to Dismiss will be GRANTED and this case will be dismissed pursuant to Federal Rule 12(b)(1).[1]

## BACKGROUND

### *Interlase, L.P.*

Decades ago, Dr. Ken Fox invented and obtained patents for specialized catheters.  *See* Compl., ECF No. 1, ¶¶ 4–6.  At the time, Dr. Fox and Coster Family Limited Partnership were the limited partners, and Lucre Investments Ltd. ("Lucre") was the general partner, of Interlase L.P. ("Interlase"), which held a license agreement for those patents in exchange for royalties. *See id*. ¶ 12; MTD Ex. 1, ECF No. 12-3, Order Denying Plea in Bar ¶ 1, *In Re: Interlase Limited Partnership*, Chancery No. 98-505 (Arlington County Cir. Ct., dated Dec. 18, 1998).

### *Mendelson Appointed as Receiver for Interlase*

---

[1] Lopatto also moves to dismiss pursuant to Federal Rule 12(b)(6), *see* MTD Mem. at 8–9, 14–24, but because the court dismisses this matter on other grounds, it need not reach this issue.

During Dr. Fox's divorce, his former spouse, Wendy Fox, and Coster Family Limited Partnership asked the Arlington County Circuit Court overseeing the divorce proceedings to appoint a receiver for Interlase, due to their concern that Dr. Fox was diverting Interlase's royalty payments to foreign bank accounts under his sole control.  *See* Compl. ¶ 9; *see also* MTD Ex. 1 ¶¶ 7–8, 10–11; MTD Ex. 2, ECF No. 12-4, Order Appointing Special Receiver, *In Re: Interlase Limited Partnership*, Chancery No. 98-505 (Arlington Cnty. Cir. Ct, September 14, 1998).  The Arlington County Circuit Court determined that Lucre was a sham entity used as a shell company, and to protect Interlase's assets, it granted the request for a receivership appointment. *See* Compl. ¶¶ 9-10; *see also* MTD Ex. 2.  Richard Mendelson was thus appointed as receiver, and was ordered to, *inter alia*, assume responsibility for the collection of Interlase's patent-license royalties.  *See* Compl. ¶¶ 9-10; *see also* MTD Ex. 2.  Notably, the court did not authorize Mendelson to pay any collected royalties to Dr. Fox.  *See* MTD Ex. 1.

On December 18, 1998, the Arlington County Circuit Court entered an Order ("Injunction Order") enjoining Lucre "and its officers, managers, directors, and agents," from claiming to be Interlase's general partner, taking any actions on behalf of Interlase, and from otherwise interfering with the receivership.  *See id.* at 10; Compl. ¶ 9.  Lucre was also ordered to immediately deliver to Mendelson any assets that it held on behalf of Interlase.  *See* MTD Ex. 1 at 10.

From 1998 until 2006 or 2007, when the patents expired,[2] Mendelson collected royalty payments due to Interlase, providing a quarterly accounting to the Arlington County Circuit

---

[2]    Sopkin contends that the patents expired in 2007, and Lopatto contends that they expired in 2006.  *Compare* Compl. ¶¶ 9–10, 19; *with* MTD Mem. at 3; *id.* at n.1 (citing Compl. Ex. 1, ECF No. 1-2, Expert Report authored by Megan E. Nelson, CPA).

Court totaling the royalties collected, as well as the portions of those royalties that were paid to Wendy Fox as part of her equitable distribution and child support award.  *See* Compl. ¶¶ 9–10, 18; MTD Mem. at 3; *see also Fox v. Fox*, 41 Va. App. 88, 93, 581 S.E. 2d 904, 907 (2003).

Mendelson was released from his role as receiver in June 2009.  *See* Compl. ¶ 22.

*Interlase Files for Bankruptcy*

In 1999, in an effort to challenge Mendelson's appointment in another court, the then-general partners of Interlase filed a Chapter 7 Bankruptcy Petition for Interlase in the United States District Court for the Northern District of Georgia, where Interlase was chartered.  *See id*. ¶ 16.  Mendelson filed a Motion to Transfer, which was granted, and the matter was then transferred to the United States District Court for the Eastern District of Virginia.  *See id*.  The bankruptcy court then appointed a Chapter 7 trustee, but determined that the trustee should defer entirely to Mendelson, and stayed the proceedings for the duration of his receivership.  *See id*. The Eastern District of Virginia released the Chapter 7 trustee in September 2011.  *See id.* ¶ 25.

*Sopkin's Introduction*

In 2003, Lucre assigned its 2% general partnership interest in Interlase to Sopkin.  *See id.* ¶ 12.  During the bankruptcy proceedings, Sopkin filed a Proof of Interest, in which she claimed that she held the 2% general partner interest in Interlase, but she later withdrew that filing with prejudice.  *See Sopkin v. Mendelson, et al.*, 746 Fed. Appx. 157, 159, 160 n.6 (4th Cir. 2018) (per curiam).  Sometime in 2016, Dr. Fox assigned Sopkin his remaining 98% limited partnership interest in Interlase.  *See* Compl. ¶ 12.

*Lopatto's Introduction*

On December 15, 2016, Dr. Fox and Sopkin retained Lopatto to pursue a claim on behalf of Interlase, seeking damages against Mendelson for alleged negligent under-collection of

3

patent-license royalties for the full duration of his receivership.  *See id.* ¶ 31; MTD Mem. at 4.

Dr. Fox and Sopkin alleged—and Sopkin continues to allege—that Mendelson failed to extend

Interlase's patents in the United States, negligently under-collected royalty payments, and

permitted the licensees to under-report the sales upon which those royalties were calculated,

costing Interlase millions of dollars.  *See* Compl. ¶¶ 14–24, 26–30, 33, 38–42, 44, 48, 56; *ad*

*damnum* clause.

### First Lawsuit—Sopkin I

On September 8, 2016, while represented by Lopatto, Sopkin, "in her capacity as

assignee of Lucre Investments, Ltd., general partner of Interlase Limited Partnership, a Georgia

Limited Partnership, and in a derivative action for Interlase Limited Partnership," filed suit in the

Eastern District of Virginia against several defendants, including the now late-Mendelson's

estate and his associated executers (the "Mendelson defendants"), and demanded more than $20

million to compensate for Interlase's alleged lost patent-license royalties. *See id.* ¶ 51; MTD Ex.

3, ECF No. 12-5, Complaint filed in *Sopkin v. Mendelson, et al.*, No. 16-cv-1146 (E.D. Va. filed

Sept. 8, 2016) ("*Sopkin I*"); *see also* MTD Ex. 4, ECF No. 12-6, copy of *Sopkin I* Dkt.  Sopkin

alleged that the Mendelson defendants violated the Virginia Business Conspiracy Act, committed

wrongful interference with contract, violated 42 U.S.C. § 1983, and committed negligence and

breach of fiduciary duty under VA Code § 8.01-597 (authorizing suit against special receivers

for breach of fiduciary duty).  *See Sopkin*, No. 16-cv-1146, 2017 WL 1536434 (E.D. Va. Apr.

27, 2017), at *3.  The trial court ultimately dismissed the case, finding that the plaintiffs failed to

state a claim under the Virginia Business Conspiracy Act or for wrongful interference with

contract, that they were beyond the two-year statute of limitations set by VA Code § 8.01-248

(catch-all statute of limitations statute to file a claim under § 8.01-597), and that they were

beyond the applicable two-year statute of limitations to file a § 1983 claim under federal law. *See id.* at *3–*7.

Sopkin, still represented by Lopatto, appealed the dismissal to United States Court of Appeals for the Fourth Circuit. *See* Compl. ¶ 52; MTD Ex. 4, at Dkt. No. 132. The Fourth Circuit affirmed the trial court. *See Sopkin*, 746 Fed. Appx. at 158, 161. And although the trial court did not address the issue of standing—raised by the Mendelson defendants below—the Fourth Circuit analyzed the issue in full. *See id.* at 158–161. It found that although Dr. Fox assigned Sopkin his 98% limited partnership interest in 2016, Sopkin nonetheless lacked standing to sue on behalf of Interlase because she could not escape her status as an assignee of Lucre, thus prohibiting her from filing suit on behalf of Interlase due to the state-issued Injunction Order. *See id.* It also noted that her lack of standing was further evidenced by her withdrawal, with prejudice, of her Proof of Interest in the bankruptcy proceedings, *see id.* at 159, 160, n.6, and that the rulings in both the Arlington County Circuit Court and the Eastern District of Virginia Bankruptcy Court were preclusive pursuant to collateral estoppel, *see id.* at 159–160.

The Fourth Circuit also found that Sopkin could not file a derivative suit on behalf of Interlase because her allegations failed to comply with Federal Rule 23.1(b)(1), and the record did not support her standing to do so. *See id.* at 160–61. Indeed, the partnership agreement itself was devoid of any indication that Dr. Fox's 2016 assignment to Sopkin "included any claims belonging to Interlase," and the record did not otherwise show "that Dr. Fox's interest in Interlase devolved on Sopkin by operation of law." *See id.* at 161.

*Second Lawsuit—Sopkin II*

In January 2019, Lopatto, on behalf of Fox and Sopkin, filed another lawsuit against the Mendelson defendants, among others, in the Eastern District of Virginia. *See* MTD Ex. 8, ECF

No. 12-10, Amended Complaint filed in *Sopkin*, No. 16-cv-1146 (filed Jan. 31, 2017) ("*Sopkin II*"); *see also* MTD Ex. 7, ECF No. 12-9, copy of *Sopkin II* Dkt., at Dkt. No. 50.  The lawsuit was brought by Sopkin, "in her capacity as assignee of Lucre Investments, Ltd., general partner of Interlase Limited Partnership, a Georgia Limited Partnership, and in a derivative action for Interlase Limited Partnership," MTD Ex. 8 at 1, and according to Lopatto, his strategy was to "plead around the injunction barring Lucre as general partner to sue for Interlase[,]" *see* MTD Mem. at 5.  While the Amended Complaint asserted the same claims against the Mendelson defendants as in *Sopkin I*, *see* Ex. 8 at 45–54, the plaintiffs now sought more than $30 million dollars in "unrecovered income" owed to Interlase, *see id*. at 15, and now claimed that Sopkin was Lucre's assignee and designee only as to Interlase's financial interests, but that Lucre's actual general partnership was not assigned to Sopkin, who was instead *elected* a general partner in her own right in 2014, distinct from her earlier assignment from Lucre.  Consequently, Sopkin contended that she had standing to sue on behalf of Interlase, *see id.* at 17–21; MTD Mem. at 5, Compl. ¶ 52.

The trial court in *Sopkin II* dismissed the case, finding that Sopkin did not have standing because she was not elected as general partner until 2014, and was not assigned Dr. Fox's 98% limited partnership interest until September 2016, and that both events occurred well after Mendelson's receivership ended in 2009, and moreover, her claims were barred by res judicata because she could have raised these already-known facts in *Sopkin I*.  *See Sopkin v. Mendelson, et al*., No. 19-cv-58, 2019 WL 13251310 (E.D. Va. May 2, 2019), at *1–*3.  Lopatto, on behalf of Fox and Sopkin, appealed this decision to the Fourth Circuit, which affirmed the trial court.  *See Sopkin*, 847 Fed. Appx. 197 (4th Cir. 2021) (per curiam); *see also* Compl. ¶ 52.

<u>Sanctions</u>

In *Sopkin I* and *II*, the Mendelson defendants moved for sanctions under Federal Rule 11 against both Lopatto and Sopkin.  *See* Compl. ¶¶ 54–55; *see also* Ex. 4 at Dkt. Nos. 103, 106, 110, 114 (Motions for Sanctions); Ex. 7 at Dkt. No. 21 (same).  In both cases, the parties came to agreements that request for sanctions would be withdrawn as to Lopatto only.  *See* MTD Mem. at 5; *see* Ex. 4 at Dkt. No. 166 (Withdrawal of Sanctions against Lopatto in *Sopkin I*); Ex. 7 at Dkt. No. 74 (same in *Sopkin II*).  Sopkin now asserts that she did not consent to these agreements, while Lopatto contends the opposite.  *Compare id*., *with* Compl. ¶ 54–55.  Lopatto claims the "rationale behind the strategy employed was based on Fed. R. Civ. P. 11(c)(5), which precludes an award of sanctions against a represented party under subsection (b)(2), as argued in pleadings filed by Mr. Lopatto and before the District Court."  MTD Mem. at 5–6; *see* MTD Ex. 11, ECF No. 12-13, Pl.'s Reply to Withdrawal of Sanctions in *Sopkin I*; MTD Ex. 12, ECF No. 12-14, Pl.'s Reply to Withdrawal of Sanctions in *Sopkin II*.

The *Sopkin II* court denied the Mendelson defendants' request for sanctions against Sopkin.  *See* MTD Mem. at 6; *Sopkin*, No. 19-cv-58, 2022 WL 18034352, at *1–*4 (E.D. Va. May 11, 2022).  But in *Sopkin I*, the court found that Sopkin's "own conduct sufficiently violated [Rule] 11(b)(1) and (3) to warrant sanctions," and ordered her to pay $62,854.24 in fees and costs to the Mendelson defendants.  *See Sopkin*, No. 16-cv-01146, 2022 WL 4002310, at *1–*3 (E.D. Va. Sept. 1, 2022); *see also* Compl. ¶ 55, *ad damnum* clause.  Sopkin has since appealed this ruling to the Fourth Circuit. *See* Ex. 4 at Dkt. No. 179 (Appeal No. 22-1992).

     *Third Lawsuit—Sopkin III*

After an unsuccessful attempt at arbitration, *see* MTD Mem. at 6; Compl. ¶ 57, in 2020, Sopkin, still represented by Lopatto, filed a third lawsuit for false accounting and the under-collection of patent-royalties against the Mendelson defendants and others in in Arlington

County Circuit Court, *see Sopkin v. Mendelson, et al.*, No. CL-200004925-00 ("*Sopkin III*"); *see also* Compl. ¶¶ 33–34.  Sopkin sued in her capacity as assignee of Lucre Investments and as general partner of Interlase, but this time the suit appeared to be have been brought, in some capacity, by Interlase itself.  *See* MTD Ex. 15, ECF No. 12-17, Motion to Dismiss Hearing Transcript in *Sopkin III* (dated March 2, 2022), at 39, 41–42, 45, 50, 61, 63, 68.  Moreover, in *Sopkin III*, the plaintiffs asserted a novel theory of negligent "surcharge" under VA Code §§ 8.01-245 ("surcharge statute" governing suits against fiduciaries themselves and accrual of same), 13.1-910 (governing receivership or custodianships), 64.2-1911 (guidelines for care of custodial property and duties of a custodian), in an attempt to reopen the receivership, as the surcharge statute relies on the longer ten-year statute of limitations, *see* Compl. ¶¶ 27, 33–34; *see also* VA Code § 8.01-245(A)–(B); MTD Ex. 15 at 18–21, 34–41, 53–60, 67–68; MTD Ex. 16, Exhibit 16, Dismissal Order in *Sopkin III* (dated March 8, 2022), at 2.  Although there appeared to be no clear precedent in support of their argument, plaintiffs posited that the surcharge statute, traditionally limited to suits against bonded fiduciaries filing accounts with the state Commissioner of Accounts in probate matters, could also plausibly apply to claims against a receiver or receivership.  *See* MTD Mem. at 18–20; MTD Ex. 15 at 18–21, 34–41, 53–60, 67–68.

 The *Sopkin III* court eventually granted the Mendelson defendants' Motion to Dismiss, again finding that neither Sopkin nor Lucre had standing to bring suit on behalf of Interlase, and further holding that they "are not proper parties and this issue has been previously adjudicated and thus are barred from suing these Defendants under res judicata and collateral estoppel."  *See* MTD Ex. 16 at 1.  The court also found that Interlase itself "had not previously pursued litigation against Richard Mendelson, its receiver, and therefore it [was] not bound by any prior court's determination of standing."  *Id.*

Finally, the court noted that, assuming arguendo the surcharge statute, § 8.01-245(A)–(B), applied to a receivership-related claim, the claim was nonetheless two years beyond the ten-year statute of limitations because no cause of action accrued against Mendelson after 2007.  *See id*. at 2.  The court made clear however, that it was "assuming without deciding" that the plaintiffs' "surcharge theory" was valid.  *See id*.

> ### *The Instant Case*

On October 17, 2022, Sopkin, a resident of Israel, individually filed this lawsuit against Lopatto, an attorney based in the District of Columbia, alleging legal malpractice, based on diversity jurisdiction.  *See* Compl. at caption, ¶¶ 1–2, 33–37, 43, 46, 51–52, 54–59.  Sopkin focuses largely on the surcharge theory, alleging that Lopatto should have sued under § 8.01-245 at the start of his representation, and that his negligence in identifying that particular cause of action impeded the plaintiffs' ability to file a timely claim within the ten-year statute of limitations. *See id.* at 27–30, 33–37, 46, 51–52.

Sopkin does not challenge specific actions taken by Lopatto in *Sopkin I* or *Sopkin II*, *see* Opp'n at 6, with one major exception.  As noted above, she claims she did not consent to Lopatto's agreement with opposing counsel to withdraw the sanctions against him, which she contends then left her exposed.  *See* Compl. ¶¶ 51, 54–56, 58, *ad damnum* clause.  She also alleges that because Lopatto raised claims in *Sopkin I* distinct from the surcharge statute, the court deemed that lawsuit frivolous, resulting in the sanctions against her.  *See id*.

In sum, Sopkin demands (1) "$11,963,416 [plus interest] for the surcharge which would have been awarded had the claim against Mendelson [under § 8.01-245] been timely filed by Lopatto[,]" and (2) $62,854.42, to compensate her for the sanctions award entered against her in *Sopkin I.  See id.* at *ad damnum* clause.

## LEGAL STANDARDS

### Subject Matter Jurisdiction

"Article III of the Constitution prescribes that '[f]ederal courts are courts of limited subject-matter jurisdiction' and 'ha[ve] the power to decide only those cases over which Congress grants jurisdiction.'" *Bronner v. Duggan*, 962 F.3d 596, 602 (D.C. Cir. 2020) (alterations in original) (quoting *Al-Zahrani v. Rodriguez*, 669 F.3d 315, 317 (D.C. Cir. 2012)); *see Gunn v. Minton,* 568 U.S. 251, 256 (2013) ("'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'") (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  Federal courts have an obligation to ensure that they do not exceed the scope of their jurisdiction.  *See Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).

A defect in "standing is a defect in subject matter jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (noting that "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III").  Absent subject-matter jurisdiction over a case, a court must dismiss it.  *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506–07 (2006) (citing *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)); Fed. R. Civ. P. 12(h)(3).  Furthermore, "[t]he defense of res judicata is [also] jurisdictional in character." *Rizvi v. McClure*, 597 F. Supp. 2d 63, 66 (D.D.C. 2009) (citing *Stanton v. D.C. Ct. of Appeals*, 127 F.3d 72, 77 (D.C. Cir. 1997)).  Therefore, "a motion for dismissal based on res judicata properly falls under Federal Rule of Civil Procedure 12(b)(1)." *Id.*

To survive a motion to dismiss under Federal Rule 12(b)(1), the plaintiff bears the burden of demonstrating a court's subject-matter jurisdiction over the claim at issue.  *Arpaio v. Obama*,

797 F.3d 11, 19 (D.C. Cir. 2015), *cert. denied*, 577 U.S. 1103 (2016); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010); *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942).  When considering a motion to dismiss under Rule 12(b)(1), a court must accept as true all uncontroverted material factual allegations contained in the complaint and "'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged' and upon such facts determine jurisdictional questions."  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005); *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004)).  A court need not accept inferences drawn by the plaintiff, however, if those inferences are unsupported by facts alleged in the complaint or amount merely to legal conclusions.  *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

When reviewing a challenge pursuant to Rule 12(b)(1), a court may consider documents outside the pleadings to ensure that it has jurisdiction.  *See Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947); *Haase*, 835 F.2d at 906.  By considering documents outside the pleadings when reviewing a motion to dismiss pursuant to Rule 12(b)(1), a court does not convert the motion into one for summary judgment; "the plain language of Rule 12(b) permits only a 12(b)(6) motion to be converted into a motion for summary judgment" when documents extraneous to the pleadings are considered by a court.  *Haase*, 835 F.2d at 905.

## DISCUSSION

### *Lost Patent- License Royalties or "Surcharge" Damages*

Sopkin alleges that she is owed the patent-license royalties that Mendelson allegedly neglected and under-reported, but this time, instead of raising this claim against Mendelson's estate, she demands these damages from Lopatto.  She now asserts that, had Lopatto originally

11

brought a timely claim under VA Code § 8.01-245, Interlase would have recovered the $11,963,416 it was owed, and that she is now entitled to an award in that amount. *See* Compl. ¶¶ 22, 27–37, 48, 51–53, 56–60; *ad damnum* clause; Opp'n at 1–6, 9, 13–19, 24, 27, 29. While Sopkin's strategy is certainly creative, it is ultimately unsuccessful, as she faces insurmountable hurdles.

Assuming the $11,963,416 is indeed owed, it is owed to Interlase, not to Sopkin, which she appears to concede. *See* Compl. ¶¶ 31, 36, 46, 51–54; Opp'n at 2–3, 5, 14–17, 20, 27–28. To avoid this problem, Sopkin argues that because she is the sole owner of Interlase, the loss of royalties directly affects her personal finances. *See* Compl. ¶¶ 53, 56, 60; Opp'n at 5, 16, 27–29.

But her sole ownership simply cannot serve as a loophole for her to personally receive an award owed to the entity, an act which would defy the entire construct of a limited partnership. Indeed, "[n]o shareholder—not even a sole shareholder—has standing in the usual case to bring suit in h[er] individual capacity on a claim that belongs to the corporation." *Am. Airways Charters, Inc. v. Regan*, 746 F.2d 865, 873 n.14 (D.C. Cir. 1984); *see Jones and Assoc., Inc. v. Dist. of Columbia*, 797 F. Supp. 2d 129, 135 (D.D.C. 2011) (finding same as to partners of limited partnerships). "The prohibition on seeking relief for a third-party has long limited the ability of shareholders in a corporation to vindicate the corporation's rights, except in specific circumstances" that are inapplicable here. *See Bronner v. Duggan*, 364 F. Supp. 3d 9, 19 (D.D.C. 2019), *aff'd*, 962 F.3d 596 (D.C. Cir. 2020).

Pursuant to the bright-line law of this jurisdiction,[3] this "shareholding standing rule" is "dictated by case law and sound policy, because . . . no shareholder suffers a harm independent of that visited upon the corporation[.]"  *See id.* (collecting cases) (citation and internal quotation marks omitted).  This prohibition applies in equal measure to limited partnerships.  *See Jones*, 797 F. Supp. 2d at 134–36.[4]  In other words, the $11,963,416 demanded arises from injuries sustained by Interlase, not by Sopkin, barring her from personally collecting it.  *See Bronner*, 364 F. Supp. 3d at 19–21 (finding that the shareholder-plaintiffs lacked standing because they sought damages owed to their corporation, therefore, it was "legally certain that" the plaintiffs could not collect such an award).

Sopkin repeatedly alleges that these damages are owed to her by way of her ownership in Interlase.  She asserts, for example, that "Interlase is broke, has no revenues, has no assets, has

---

[3]     Although most of the events giving rise to this case occurred in Virginia, the parties appear to agree that District of Columbia law applies, particularly given the lack of conflict between Virginia and District of Columbia law on the issues in this case.  *See* MTD Mem. at 11, n.3; Compl. at *ad damnum* clause; Opp'n at 22, 27.  The court agrees that D.C. law applies, but it will also cite, where applicable, Virginia law.

[4]     Likewise, Virginia state and federal law recognize the shareholder standing rule and its application to limited partnerships.  *See, e.g., Little v. Cooke*, 274 Va. 697, 712 (2007) ("When a limited partner alleges wrongs to the limited partnership that indirectly damaged a limited partner by rendering his contribution or interest in the limited partnership valueless, the limited partner is required to bring his claim derivatively on behalf of the partnership.") (citation omitted); *Harmon v. Harmon*, No. 20-cv-1442, 2022 WL 610174, at *4–*5 (E.D. Va. Mar. 1, 2022) (applying Virginia law and noting that plaintiff's "novel pleading strategy" suggesting a "direct cause of action" by a limited partner "predicated primarily on harms . . . allegedly inflicted on the limited partnership" was unsuccessful and would "contravene[] the very principles underlying derivative claims, which are designed to guard against litigation abuses[,]" because "the overwhelming majority rule is that an action for injuries" to a partnership "cannot be maintained . . . on an individual basis."); *Keith v. Town of Knightdale*, Nos. 96-1981, 96-1999, 1998 WL 112815, at *3–*4 (4th Cir. 1998) (finding that an individual plaintiff could not sue a town and its officials for alleged wrongdoing to his partnership because he suffered "no injury independent of his status as a partner" and could not claim the partnership's injuries as his own).

13

lost everything[,]" Compl. ¶ 56, and that "Sopkin as plaintiff [is owed] for all of the money damages incurred by Interlase over lost patent royalties/hopeless Mendelson accounting/fiduciary responsibility/Lopatto negligence," Opp'n at 3. At one point, she even asserts that this matter "is now," "properly brought . . . , by Interlase[,]" Compl. ¶ 52, but she is the only plaintiff named. Therefore, even assuming for purposes of this argument that Lopatto is tangentially responsible for the loss of royalties, and assuming that he, in fact, owed and breached a duty to Sopkin, the $11,963,416 in damages would still belong solely to Interlase. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) (finding that, if a plaintiff was never was entitled to recover damages sought, a court is without jurisdiction, and the suit must be dismissed). Because the damages claimed here arise directly from injuries sustained by Interlase—in fact, they were sustained entirely by the entity—they do not fall within any exception of the shareholder standing rule and consequently cannot survive as pleaded, regardless of whether they are brought as a direct or derivative suit against Mendelson, or whether they are brought as a derivative or direct legal malpractice suit against Lopatto. *See id.*; *Wash. Tennis & Edu. Found., Inc. v. Clark Nexsen, Inc.*, 324 F. Supp. 3d 128, 142–43 (D.D.C. 2018).

Sopkin acknowledges this barrier to entry; in her Opposition, she states that she "is willing to have Interlase, the entity, join this claim as co-plaintiff[,] to cure th[e] [standing] situation." *See* Opp'n at 3. But Interlase cannot be added to this lawsuit.

First, Sopkin cannot bring a claim on behalf of Interlase. As discussed above, not one, but *three* previous courts—the Fourth Circuit in *Sopkin I*, the Eastern District of Virginia in *Sopkin II*, and Arlington County Circuit Court in *Sopkin III*—have clearly ruled that Sopkin cannot raise *any* claims on Interlase's behalf because she lacks standing to do so. Put differently,

"the question of standing was vigorously litigated at all stages by all parties . . . and therefore a finding that the issue is precluded from relitigation would not work a 'basic unfairness.'" *Newdow v. Bush*, 391 F. Supp. 2d 95, 100–101 (D.D.C. 2005) (finding that the plaintiff's "newly alleged injuries" did not cure his defect in standing, and that the issue was precluded from review based on a previous ruling).

The D.C. Circuit[5] has instructed that "principles of collateral estoppel clearly apply to standing determinations." *Cutler v. Hayes*, 818 F.2d 879, 889 (D.C. Cir. 1987); *id.* at n.73 (collecting cases that stand for this proposition). Regardless of how strongly Sopkin disagrees with the prior cases barring her from recovering damages on behalf of Interlase, there is "no material difference between the legal issue decided [in her previous cases] and the one presented here[.]" *Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emp. of Congr., Inc. v. Billington*, 802 F. Supp. 2d 65, 69–70 (D.D.C. 2011), *aff'd*, 737 F.3d 767 (D.C. Cir. 2013). Although Sopkin's allegations have been reworked for a different defendant and a different injury, this does not alter the long-held prohibition to her acquisition of the lost patent-royalties. *See Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1192 n.5 (D.C. Cir. 1983) (finding that courts shall not permit a "newly discovered injury" to cure a jurisdictional dismissal because such a rule would permit "frequent and unavoidable impairment of the finality of jurisdictional dismissals."); *id.* at 1193 n.7 (noting that the application of res judicata to a prior jurisdictional

---

[5]     The Fourth Circuit has also found that collateral estoppel applies to previous standing determinations, *see, e.g., Goldsmith v. Mayor & City Council of Baltimore*, 987 F.2d 1064, 1069 (4th Cir. 1993) ("[A] jurisdictional dismissal that does not constitute a judgment on the merits so as to completely bar further transactionally-related claims still operates to bar relitigation of issues actually decided by that former judgment."), as evidenced by the holdings in Sopkin's own cases, *see Sopkin*, 746 Fed. Appx. at 159–160; *Sopkin*, 2019 WL 13251310 at *1–*3; *see also* MTD Ex. 16 at 1.

determination "is consistent with the court's "estimation of the appropriate trade-off between the prevention of harassing litigation and ease of judicial application."). Consequently, the prior judgments that Sopkin lacks standing have "binding, preclusive effect here" and this court will not reconsider those judgments for a fourth time. *See Billington*, 802 F. Supp. 2d at 69–70.

Second, even if Sopkin could "join" Interlase as a "co-plaintiff," *see* Opp'n at 3, or even if she attempted to substitute Interlase as the proper plaintiff, she could not do so in this court, because she is proceeding *pro se* and IFP and Interlasen cannot proceed *pro se* and under the IFP statute, 28 U.S.C. § 1915(a)(1); the Supreme Court has interpreted that provision as applicable "only to individuals" or "natural persons," not "artificial entities." *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201–07 (1993); *see Comm. Educ. Found. v. Comm'er of IRS*, No. 17-1105, 2018 WL 11433975, at *1 (D.C. Cir. Aug. 8, 2018) (same); *SEC v. Finnegan*, No. 97-5272, 1998 WL 65530, at *1 (D.C. Cir. Jan. 13, 1998) (same).

"In all courts of the United States the parties may plead and conduct their own cases personally or by counsel[,]" 28 U.S.C. § 1654, but an artificial entity cannot proceed in federal court without licensed counsel, *see Greater Southeast Cmty. Hosp. Found., Inc. v. Potter*, 586 F.3d 1, 4 (D.C. Cir. 2009) (citing *Rowland*, 506 U.S. at 201–02) ("It has been the law for the better part of two centuries, for example, that a corporation may appear in the federal courts only through licensed counsel."); *Am. Airways*, 746 F.2d at 873 n.14 ("[A] corporation, which is an artificial entity that can only act through agents, cannot proceed *pro se*.") (internal quotation marks and citations omitted); *Diamond Ventures, LLC v. Barreto*, 452 F.3d 892, 900 (D.C. Cir. 2006) (same); *Bristol Petroleum Corp. v. Harris*, 901 F.2d 165, 166 n.1 (D.C. Cir. 1990) (same).

The term "artificial entity" is broadly inclusive, and it specifically applies to limited partnerships. *See, e.g.*, *Rowland*, 506 U.S. at 202 (holding that "corporations, *partnerships*, or

16

associations" cannot "appear in federal court otherwise than through a licensed attorney")

(emphasis added) (citing *Eagle Associates v. Bank of Montreal*, 926 F.2d 1305, 1310 (2d Cir.

1991)); *McGowan v. Cross*, 991 F.2d 790, 790 n.1 (4th Cir. 1993), *cert. denied*, 510 U.S. 909

(1993).

Here, Sopkin cannot file suit *pro se* on behalf of Interlase, and Interlase can neither

proceed *pro se*, nor can it apply to proceed IFP.  Sopkin is already aware of this, though, because

shortly before filing this case, she unsuccessfully attempted to do just that.  In *Interlase L.P. v.*

*Lopatto*, No. 22-cv-02349 (UNA) (D.D.C. filed Aug. 8, 2022), Sopkin and Fox attempted to

bring a substantially similar, if not identical, lawsuit against Lopatto for legal malpractice, "on

behalf of Interlase fully," and with only Interlase as "the plaintiff party[,]" while proceeding *pro*

*se* and IFP.  *See id.* at Complaint, Dkt. No. 1, ¶¶ 2, 13, 57; *see also id.* at IFP Application, Dkt.

No. 2.  On October 18, 2022, a court in this District reviewed the pleadings and notified Sopkin

and Fox that Interlase could not proceed *pro se* or IFP.  *See id.* at Order, Dkt. No. 4.

Accordingly, that court properly struck Interlase's filings, but provided Sopkin and Fox with a

60-day extension to obtain counsel, file an amended complaint, and pay the associated filing fee.

*See id.* at 4.  Sopkin and Fox never complied with the court's directives, and approximately

seven months later, another court in this District dismissed that matter in full, *see id.* at Dismissal

Order, Dkt. No. 5.  About two weeks later, Sopkin filed this case in her name only in what

appears to be an attempt to circumvent the requirements that must be met for Interlase to

proceed.

For all of these reasons, Sopkin is without standing to file in *any* capacity on behalf of

Interlase, and she is also without standing to individually recover the $11,963,416 in alleged lost

patent-royalty payments because they are owed to Interlase.  Furthermore, Interlase may not be

substituted as a plaintiff in this action because it fails to meet the jurisdictional prerequisites to do so.

### *Sanctions-Related Damages*

Sopkin seeks damages of $62,854.24, representing the amount of sanctions entered against her in *Sopkin I.  See ad damnum* clause. While she appears to have standing to bring a claim for those damages because they were awarded against her individually, *see Sopkin*, 2022 WL 4002310, at *1, *1 n.1, *3, the amount of those damages falls more than $12,000 short of the $75,000 required to sustain a claim based in diversity jurisdiction, *see* 28 U.S.C. § 1332(a). Sopkin "bears the burden of establishing the amount in controversy[,]" *Rosenboro v. Kim*, 994 F.2d 13, 17 (D.C. Cir. 1993), and if it is "legally certain" from the face of the pleadings that the claim is "really for less than the jurisdictional amount[,]" the case must be dismissed for want of jurisdiction[,] *see St. Paul*, 303 U.S. at 288–89 (footnotes omitted).

Here, it is a legal certainty that Sopkin's sanctions-related damages claim is insufficient. The amount sought is clearly and specifically delineated in Sopkin's *ad damnum* clause, *see Paley v. Ogus*, 20 F. Supp. 2d 83, 93 (D.D.C. 1998) ("satisfaction of the jurisdictional amount is determined by the amount of damages that the plaintiff claims at the initiation of the lawsuit"), because it represents the specific amount in costs and fees awarded by the court in Sopkin I, also a matter of public record, *see Sopkin*, 2022 WL 4002310, at *3.  And as already discussed above, Sopkin does not have standing to collect the $11,963,416 that belongs to Interlase, so those damages must be subtracted from the total amount claimed.  *See Goldman v. Fiat Chrysler Automobiles US, LLC*, 211 F. Supp. 3d 322, 326 (D.D.C. 2016) (remanding case for falling

below the required amount, after subtracting the damages found ineligible to contribute to the full amount in controversy).[6]

 This District's decision in *Bronner*, 364 F. Supp. 3d at 17–23, is apposite to the facts of this case.  In *Bronner*, the trial court dismissed the case pursuant to Federal Rule 12(b)(1), finding that member-plaintiffs lacked standing to seek damages owed to their corporation, and although they sought additional damages arising from injuries they suffered directly, those damages, standing alone, did not total $75,000.  *See id.*  The D.C. Circuit affirmed that decision in full.  *See Bronner*, 962 F.3d at 598–599, 612.  The same rationale applies here.  Because Sopkin lacks standing to seek damages on behalf of Interlase, and it is legally certain that her remaining damages do not meet the required amount-in-controversy, this court lacks subject matter jurisdiction under 28 U.S.C. § 1332(a).  *See Bronner*, 364 F. Supp. 3d at 23.

 <u>Venue</u>

 Finally, even if this court had subject matter jurisdiction, this matter should not be heard in this venue and is more appropriately suited to be heard in the Eastern District of Virginia.  *See* MTD Mem. at 25–26.  Lopatto invokes the doctrine of *forum non conveniens*, *see id.* at 9–10, 25–26, but after the enactment of 28 U.S.C. § 1404(a) (allowing for transfer to any other district

---

[6] This jurisdictional standard is applied the same way in Virginia federal courts.  *See Payton v. Freeze,* 49 F.R.D. 11, 15–17 (E.D. Va. 1969) (finding that if, at any time, the court determines that, as a matter of law, "the plaintiff is not entitled to recover an amount equal to the jurisdictional requirement, the Court should dismiss the cause.") (citing *F&S Const. Comp. v. Jensen*, 337 F.2d 160, 161–62 (10th Cir. 1964); *Gauldin v. Virginia Winn-Dixie, Inc*., 370 F.2d 167, 170 n.1 (4th Cir. 1966); *St. Paul,* 303 U.S. at 288–89)); *see also Parker v. Moitzfield*, 733 F. Supp. 1023, 1026–27 (E.D. Va. 1990) (finding that, where the pleadings show that it is "not legally possible" for a plaintiff to recover the jurisdictional amount, there can be no subject matter jurisdiction, including where one category of damages reveals itself as "facially defective," thus lowering the amount claimed below the threshold, and concomitantly eliminating the viability of the other claimed damages) (citing *Wiggins v. North Amer. Equitable Life Assur. Co*., 644 F.2d 1014, 1018 (4th Cir.1981)).

or division where a case might have been brought, for the convenience of parties and witnesses and in the interest of justice), "*forum non conveniens* has continuing application only in cases where the alternative forum is abroad[,]" *see Am. Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2 (1994), and Lopatto does not seek to have this matter be litigated in Israel.

Lopatto's venue arguments are still applicable, however, because "the analytic framework[,]" and factors considered in examining *forum non conveniens* and § 1404(a) are the same; the primary difference is dismissal versus transfer, respectively. *See Poole v. Brown*, 706 F. Supp. 74, 75 n.3 (D.D.C. 1989) (citations omitted); *Franklin v. South. Ry. Co.*, 523 F. Supp. 521, 255–24 (D.D.C. 1981) (explaining same); *Schmid Laboratories, Inc. v. Hartford Acc. and Indem. Co.*, 654 F. Supp. 734, 737 (D.D.C. 1986) (noting that §1404(a) "grew out of the common law doctrine of *forum non conveniens*," and that both "were in part intended to prevent forum shopping"); *compare Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508–09 (1949) (listing public and private interest factors applicable to *forum non conveniens*), *superseded by statute on other grounds*, *Am. Dredging Co.*, 510 U.S. at 448–450, 449 n.2, *with Spotts v. United States*, 562 F. Supp. 2d 46, 52–53 (D.D.C. 2008) (both listing the same public and private interest factors applicable to § 1404(a)).

Here, under the relevant factors, Sopkin "is due little deference" to her choice of venue. *See Hueter v. Kruse*, 610 F. Supp. 3d 60, 68 (D.D.C. 2022); *Spotts*, 562 F. Supp. 2d at 52 (citing *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 24 (D.D.C. 2002); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981)). She is not a District resident, *see id.*, and she resides overseas, "with minimal or no connections to the United States[,]" *In Re Air Crash over the So. Ind. Ocean on March 8, 2014*, 946 F.3d 607, 614 (D.C. Cir. 2020), *aff'd*, 946 F.3d 607 (D.C. Cir. 2020), *cert. denied sub nom.* 141 S.Ct. 451 (2020). The only connection between the events in

this case and this District is the location of Lopatto's law firm, and while the court acknowledges that Lopatto likely strategized, conferred, and drafted legal materials here, *see* Opp'n at 26, every single alleged harmful event or central determination occurred within a Virginia federal or state courthouse; indeed, Sopkin argues that Lopatto erred by failing to file a statutory claim under Virginia state law. *See, e.g., Poole*, 706 F. Supp. at 77 (finding that the District of Columbia was an inappropriate forum where "the District of Columbia ha[d] no connection with th[e] matter, save the . . . residence of the defendant."); *Ott v. Kaiser-Georgetown Comm Health Plan, Inc*., 689 F. Supp. 9, 13–14 (D.D.C. 1988) (finding that the District of Columbia was an inappropriate forum where the case's "only two connections" to this forum were the location and incorporation of the defendant's business, and the plaintiff's receipt of insurance services from the defendant within the District); *see also West. Watershed Proj. v. Pool*, 942 F. Supp. 2d 93, 100 (D.D.C. 2013) (finding that, in assessing a venue challenge, "the location of defendants and their counsel is not a strong consideration[.]").

The court also construes Sopkin's choice of venue to be at least partially tactical and redolent of forum shopping.  *See Schmid*, 654 F. Supp. at 737; *Gage v. Somerset County*, 369 F. Supp. 3d 252, 262–63 (D.D.C. 2019).  She has repeatedly noted her concerns regarding the Eastern District of Virginia's view of her previous litigation as "frivolous," and indeed, that court issued sanctions against her, *see* Compl. ¶¶ 54–55; *ad damnum* clause.  She has also accused the Eastern District of Virginia of fundamentally misconstruing her claims, *see id.* at 17, and judges in the Arlington County Circuit Court of bias, "ill motivation" and "legal gross deficiencies[,]" Opp'n at 6–7, 11.  Given her continued lack of success in Virginia courts, it appears that Sopkin has attempted "another bite at the apple" here by filing in a new forum less familiar with her claims.  *See Schmid*, 654 F. Supp. at 737; *Gage*, 369 F. Supp. 3d at 262–63.

The availability and logistics of gathering evidence, subpoenaing witnesses, and convening a trial are fairly neutral with respect to both venues. *See Sallyport Global Services, Ltd. v. Arkel International, LLC*, 78 F. Supp. 3d 369, 374 (D.D.C. 2015).  But given the "local interest in having localized controversies decided at home," *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 70 (D.D.C. 2003) (quoting *Adams v. Bell*, 711 F.2d 161, 167 (D.C. Cir. 1983)), particularly because the merits of this action turn on an interpretation of a local Virginia statute––§ 8.01-245(A)–(B)—and would involve previous determinations made by Virginia courts, this case would be better situated in the Eastern District of Virginia, *see Schmid*, 654 F. Supp. at 737 (holding that the court "cannot find that it is in the interest of justice to encourage, or even allow, a plaintiff to select one district exclusively or primarily to obtain or avoid specific precedents, particularly in circumstances such as these where the relevant law is unsettled and the choice of forum may well dictate the outcome of the case."); *Otay Mesa Prop. L.P. v. Dep't of Interior*, 584 F. Supp. 2d 122, 126 (D.D.C. 2008) (in assessing the propriety of venue, a court must evaluate whether the issues involve local laws or statutes); *Nat'l Wildlife Fed. V. Harvey*, 437 F. Supp. 2d 42, 49–50 (D.D.C. 2006) (finding that, where a controversy involves issues of state law, the balance weighs heavily toward transfer) (citation omitted); *Airport Working Grp. of Orange County, Inc., v. Dep't of Defense*, 226 F. Supp. 2d 227, 232 (D.D.C. 2002) (transferring case because the plaintiff would "benefit from [the] familiarity with local laws and regulations" of the transferee venue).

Because Sopkin has failed to establish federal subject matter jurisdiction, this court cannot, and will not, transfer this case to another federal court, but if this case was not otherwise deficient, it would have been more appropriately filed in the Eastern District of Virginia.

## **CONCLUSION**

For the reasons set forth above, Defendant John Lopatto's Motion to Dismiss, ECF No.

12, is GRANTED and this case is DISMISSED pursuant to Federal Rule 12(b)(1). A separate

Order will be issued contemporaneously.

Date:  September 8, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge